BARKETT, Chief Justice.
Under the provisions of article V, section 9, of the Florida Constitution, the Florida Supreme Court is responsible for determining the need for an increase or decrease in the number of judges required to consider and dispose of cases filed before the respective courts. To this end, we have analyzed ease filings and evaluated the growth in the workload of the State Courts System over the past several years.
As the result of this review, we certify the need for eight circuit court judges and three county court judges. A comparison of the requests for new judges filed by the respective courts and the new judgeships certified as needed for fiscal year 1994-96 follows:
*1089 [[Image here]]
Florida Rule of Judicial Administration 2.035(b)(1) sets forth the criteria for certification of need for judges at the trial court level. As with certifications of recent years, we have placed the greatest weight on statistical data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and rehable measure of workload at the trial *1090 court level is total ease filings per judge. Criminal, civil, probate, family, and juvenile case filings for each circuit are also evaluated by applying different weights reflecting varying requirements for judicial hearing time and attention. The filings per judge statistics for the county courts are adjusted to exclude worthless cheek and civil traffic infractions.
In addition to those factors prescribed in Florida Rule of Judicial Administration 2.035, other criteria we considered included the use of county and senior judges on temporary assignment; the availability of supplemental hearing resources furnished by the counties (traffic magistrates, child support hearing officers, and general or special masters); reb-anee on mediation and arbitration to resolve cases; and special local circumstances that affect case handling.
We find it necessary to certify the need for eight circuit judges this year, including one additional circuit judgeship for the Fifth, Twelfth, Fourteenth, and Eighteenth Judicial Circuits and two additional circuit judgeships for the Ninth and Eleventh Judicial Circuits.
Overall, circuit case filings are projected to be down from 1992 to 1993, and this trend is predicted to continue in 1994, albeit at a reduced rate. This downward trend is driven by a substantial decline in circuit civil filings. In 1992, civil filings declined 13.2% from the 1991 level. A decline of approximately 8.9% is expected for 1993 and civil filings should fall another .9% in 1994. While the increase in the monetary jurisdiction of the county court to $15,000 (from $5,000) that went into effect between 1990 and 1992 is a primary contributor to this decline, the magnitude of the decrease cannot be attributed solely to this jurisdictional change. Other factors contributing to this decline are unknown at present, though the disruption caused by Hurricane Andrew to the operations of the courts in south Florida in early fall of 1992 is documented to have had an impact.
The circuits have realized a gradual increase in domestic relations cases. Prior year filings of guardianship and mental health eases have also seen modest increases. However, domestic violence filings are projected to increase in excess of 50% from 1991 to 1994.
Criminal filings are projected to show a decline of 3.6% from 1992 to 1993 and an additional modest reduction of .2% in 1994. Juvenile filings are expected to grow 1.2% and 1.5% per year over the same time frame. A more recent and disturbing trend, however, is the increase in crimes of violence. Violent felony case filings are increasing in proportion to other crimes. Likewise, juvenile delinquency case filings are increasing in lethality.
All of the courts for which new circuit judgeships are requested are projected to have 1994 filings levels very near to or well above the 1,865 filings per judge threshold, at which this Court has determined there is a presumptive need for more judicial resources, with the exception of the Eleventh Judicial Circuit. Other factors, such as geographical constraints affecting judicial assignments, the availability and reliance on senior judges for temporary assignment, and historical assignments of county judges to hear circuit court matters, weighed heavily in our decisions for selected circuits.
We are certifying the need for two additional circuit judgeships for the Eleventh Judicial Circuit notwithstanding that forecasted caseloads are somewhat below the threshold of 1,865 filings per judge. The most compelling factor in favor of the request of the Eleventh Judicial Circuit is the increasing cultural diversity of litigants, defendants, and witnesses appearing in court proceedings. Last year, almost 195,000 translations of testimony were required in Dade County. This results in more lengthy hearings and trials and is substantiated by data on the length of trials gathered by the Office of the State Courts Administrator which indicates such proceedings require about 25% more time in the Eleventh Judicial Circuit than in other circuits. We also find that the Eleventh Judicial Circuit loses the equivalent of approximately two circuit judges due to administrative duties required of the chief judge and administrative judges of the separate divisions of the court. These factors have necessitated extensive assignments of county *1091 judges to the circuit court to the apparent detriment of ease handling in the county court. It is the view of this Court that the two additional circuit judges we are certifying should enable a shift of some of the existing county judges back to county court. Such a shift coupled with the new Dade County judgeship we certify as needed should permit more efficient handling of cases in the jurisdiction of the county court.
These judgeships are critical to the ability of the circuit courts to keep up with caseloads. Significant differences in waiting time to have motions heard or cases tried in civil, family, and criminal matters have developed because, in times when resources are limited, chief judges must give priority to criminal dockets. This causes civil and family calendars to become more congested. With disposition rates leveling off in recent years, which suggests Florida judges are working at or near capacity, these already intolerable delays will only worsen if the additional judge-ships we have certified are not authorized and funded. The judgeships we find to be needed will not enable a reversal of these trends, but they are crucial to our ability to avoid greater delays than are currently the norm in the affected circuits.
We also find that addressing the workload problems of the trial courts requires a comprehensive approach. Our senior judge program, additional compensation for county judges serving in circuit court, trial court law clerks, and other management and technological enhancements are essential components of our overall strategy to improve the operation of the judicial system. We are also proposing a new family court initiative, full funding for which is critical to our trial courts’ ability to meet their constitutional obligations. Research findings consistently point out that dysfunctional families contribute to crime and delinquency among our youth as well as increased domestic violence and child abuse. We are proposing a comprehensive integrated response to families in litigation which requires enhanced resources for the judicial system at the front end of the process, and better communication between the courts and community based resources designed to meet specific needs of individuals and families. The courts must be equipped to identify the needs and problems of families seeking court intervention before they escalate into crime, violence, delinquency, divorce, child abuse, and child neglect. In addition to the humanitarian benefits of this initiative, we believe it will also enhance the trial courts’ ability to effectively handle the current caseload problems in those divisions of circuit court where family related matters are heard.
County court criminal and civil filings are projected to remain relatively stable through 1994. However, DUI ease filings are projected to increase 3.6%. Also, the change in the blood alcohol level for DUI offenses from .10 to .08, which recently took effect, will likely push DUI filing levels higher. We expect a concomitant increase in jury trial activity for such cases. Similar increases in trials for non-small claims civil filings (cases with a monetary value between $5,000 and $15,000) are expected. These types of cases require more judicial time to dispose of, and therefore offset the relatively flat county caseload trend overall.
We are certifying the need for three new county court judgeships for fiscal year 1994-95 with one additional for Dade, Broward, and Hillsborough Counties.
In evaluating the need for such positions, we relied principally on case filings data that were adjusted to include only criminal, civil, DUI, and other criminal traffic cases. As in the past, worthless check cases and civil traffic infractions were weighted less heavily because of their limited requirements for judicial time, the diversion of large numbers of worthless check eases in selected circuits, and the variability and volume of such cases reported from county to county. We have determined that 6,114 filings per judge is the threshold that should be used to determine the need for an additional county judge.
County courts with caseloads near or exceeding 6,114 filings per judge are operating at or above capacity. County judges in such courts were found to have relatively little time to assist with case assignments at the circuit court level. Where the judges in these counties did help with the circuit court workload, it was to the detriment of case *1092 processing in the county courts. All of the counties for which certification of need is made are projected to exceed the 6,114 threshold.
Full funding for the requests certified as needed herein is deemed absolutely essential if Florida’s courts are to fulfill their constitutional mandate to try cases in a fair, impartial, and timely manner.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.